## APPEAL OF CITIZENS TRUST CO.

Docket No. 1798.    Submitted May 18, 1925.    Decided July 10, 1925.

Evidence *held* insufficient to prove the receipt by the taxpayer of exempt income or the inclusion of that income in the net income found by the Commissioner.

*T. J. O'Brien, Jr., C. P. A.*, for the taxpayer.
*Lee I. Park, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the years 1919 and 1920, in a total amount

of $1,240.02. The issue involved is whether the taxpayer is entitled to treat as exempt income interest received by the clipping of coupons, and also directly from purchasers of United States Liberty and Victory Bonds, purchased by the bank and sold to subscribers.

FINDINGS OF FACT.

The taxpayer is a Georgia corporation with its principal office in Savannah.

During the years 1917 to 1919, inclusive, the taxpayer, in common with banks throughout the country, aided in the flotation of the various Liberty Loans and of the Victory Loan by serving as a retail distributor of such bonds. In this connection it was frequently necessary to spread the period, during which the subscriber paid for the bond, over a considerable time. It was the practice of the bank, when subscriptions had been made for a particular Liberty Loan, to order from the Federal Reserve Bank an amount of bonds sufficient at least to cover such subscriptions. An account was entered with the subscriber on the books of the bank, to which was credited from time to time the payment on account of his subscription to the loan, usually in the form of weekly payments made by the subscriber. The bank did not allocate any particular bond to the subscriber, and, as this process of payment continued and coupon dates fell due, the bank itself clipped the coupons, forwarded them to the Federal Reserve Bank, and credited its own interest account for the proceeds. When the last subscription payment on the principal of the bond was made by the subscriber, he also paid any accrued interest at the government rate carried by the particular bond issue and thereupon received a bond at that time allocated to him for the first time.

For the purpose of keeping records of these transactions, and to make clear the nature of the contract between the bank and the subscriber, the bank issued record cards in two separate forms during this period. The first form was used for the Second, Third, and Fourth Loans, and, it would seem, for some of the Victory Bonds sold, and the second card was used in connection with the Fourth and the Victory Loans. The entire agreement between the bank and the subscriber was set forth upon these cards, a sample of which, as to each, is as follows:

This card is issued to

_____

_____

as a depositor in our United States Government Liberty Loan Club, for the purpose of purchasing at $50.00 United States 3½% "Liberty Loan Bond," subject to the rules as set forth on the back of this card.

Payments are due each week as indicated by dates and amounts below. The dates given fall on Mondays and payments should be made before the close of business on Saturday (noon) of the same week.

## PURPOSE AND OBJECT

The purpose and object of this club is to give every man, woman and child an opportunity to do "their bit" in assisting our Government to furnish supplies and munitions for our Army and Navy.

President Wilson has asked the aid of every one, and the Bank is the recruiting ground of Finance. We open up the way for all to co-operate on the installment plan.

By putting aside a part of each week's earnings as your share, we agree at the expiration of 50 weeks (if all payments have been made as called for on this card) to transfer a fifty dollar United States Government bond of the "Liberty Loan," bearing 3½% interest from date of last payment.

## RULES GOVERNING OUR UNITED STATES GOVERNMENT LIBERTY LOAN CLUB

The person named hereon, by accepting this card, agrees to the following Rules:

1. That weekly deposits will be made of the amount called for on the dates due or in advance as designated on the face of this card.

2. This card must be presented at the bank at the time of making weekly payments to the proper person or persons duly authorized by the bank to accept and receipt for funds, who will receive the money and punch out the amount paid on this card, and at the same time will punch like amount out of an Office Card held by the bank bearing duplicate number and name of this card.

3. This card is not to be mutilated in any way and is null and void if punched by any other person not duly authorized by this Bank.

4. That this Bank reserves the right to refuse deposits from any member, if for any reason it is deemed advisable.

5. This card is not negotiable or transferable, and funds are not due for transfer before the expiration of the 50 weeks, or when full payment has been made.

25 Weeks Club.                                          4th Liberty Loan
                                                        $2.00 Weekly
                                                        $50.00 Bond.

    Club starts on _____
        Name _____
        Address _____

## LIBERTY LOAN CLUB AGREEMENT, RULES AND REGULATIONS.

By the acceptance of this Card and making my first weekly payment for amount as shown on face of this Card, I hereby agree that all future payments made shall be subject to the following Liberty Loan Club Rules and Regulations.

1. Payments are to be made on Monday of each week, or may be paid on any business day during the same week, or for any number of weeks in advance.

2. It is understood and agreed that my Card is to be presented at the Bank when each payment is made. The teller authorized by the Bank to receive

deposits will stamp in my presence, my Card, also Bank's Office Card of duplicate number. No other person or persons are to stamp these Cards, except those authorized by the Bank.

3. It is understood and agreed that demand cannot be made for money paid in on this account, and that my Card is not negotiable or transferable, and is not to be stamped or multilated in any way that would mislead as to the correct amount deposited in the Bank.

4. It is distinctly agreed that should a difference appear to be in the amounts of payments made between my Card and the bank's office record of duplicate name or number, that the bank's record be accepted as correct, hereby releasing the bank from any liability except as to the amount due me as shown by their records.

5. Should I change my address, or should my Card be lost, I will immediately notify the bank. Payments sent by me through mail is at my own risk, and postage is to be enclosed for the return of the card.

6. It is agreed that in 25 weeks from the date this Club starts, upon my having complied with all the rules of this Club, the $50.00 then to my credit shall be used to pay the bank for a $50.00 United States Liberty Loan Bond of the Fourth Issue, and I hereby direct the bank to purchase for my account the said Liberty Loan Bond.

It is further agreed and understood that all interest earned by said Bond during the time held for me by the bank, shall be collected and retained by the Bank.

7. Should I become dilinquent in making the said weekly payments for a period of fifteen business days, the Bank is hereby authorized to sell the Bond at the then market value without notice of any kind, and charge the deficit, if any, to this account.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

JAMES: When first called for hearing, this appeal was continued to give the representative of the taxpayer an opportunity to present evidence in support of the allegations of its petition and to overcome the denials of the Commissioner in his answer. At the second hearing the taxpayer produced the cashier of the bank as a witness, who testified in general terms to the manner in which the business of the taxpayer was carried on in connection with the Liberty Loans. This evidence, together with the documentary evidence introduced, is summarized in the foregoing findings of fact. No evidence whatever was introduced as to the amount of interest collected by the clipping of coupons or from subscribers to the Liberty Loans in either of the taxable years here in question.

The petition does not show even the amount of interest claimed to be taxable by the Commissioner and denied to be taxable by the taxpayer. The Commissioner, in paragraph 3 of his answer, states:

Admits that the Commissioner refused to include in exempt income of 1919 and 1920, respectively, the amounts of $3,069.53 and $1,860.41.

92208—26——19

In paragraph 6 the Commissioner says:

> Denies that the amounts of $3,069.53 and $1,860.41 involved represented exempt income to this taxpayer.

If the taxpayer were entirely correct in all of its allegations, and if it were entirely correct in its position as to the law of the case, it still must be held that it has failed both to plead and to prove the essential facts upon the establishment of which its success in this appeal depends.